IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:16-CR-56 |
| BAO Q. DOAN | ) | |
| | ) | |

## MEMORANDUM OPINION

A three-count indictment has issued charging defendant with one count of conspiring to traffic in counterfeit goods, in violation of 18 U.S.C. § 2320(a)(1), and two counts of smuggling, in violation of 18 U.S.C. § 545. At issue on defendant's pre-trial motion to suppress and motion for a bill of particulars are the following questions:

>(i) whether the fruits of three pre-arrest interrogations should be suppressed because defendant was in custody during each of those interrogations and was not provided *Miranda*[1] warnings;
>
>(ii) whether defendant knowingly and voluntarily consented to a number of searches of his property; and
>
>(iii) whether the government's indictment is sufficiently particularized.

The matter has been fully briefed and argued, and for the reasons stated from the bench, an Order issued denying defendant's motion to suppress and defendant's motion for a bill of particulars. *United States v. Bao Q. Doan*, No. 1:16-CR-56 (April 22, 2016) (Order) (Doc. 35).[2] This Memorandum Opinion records and elucidates the reasons for denying defendant's motion to suppress and defendant's motion for a bill of particulars.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] The Order also denied as moot defendant's motion to compel discovery on the basis of the parties' representation during oral argument that the discovery dispute had been resolved. *Id.*

1

**I.**

During the April 22, 2016 hearing on defendant's motion to suppress, the government presented exhibits and testimony from Raymond Abruzzese ("Agent Abruzzese"), a special agent with the Department of Homeland Security ("DHS"). Agent Abruzzese's testimony was cogent and credible. Defendant Bao Q. Doan also testified.

The pertinent facts, derived from the testimony of these two witnesses and the exhibits admitted during the April 22, 2016 hearing, may be succinctly summarized.

- Defendant, a thirty-two year old resident of Falls Church, Virginia, is the owner and operator of IFAIFO, a small business that sells cell phone parts and offers device-repair services.

- Defendant, a United States citizen, was born in Vietnam, and English is his second language. Defendant lived in Vietnam through his teenage years before moving to the United States in 2002. Defendant earned a Bachelor of Science degree in Finance from George Mason University, where he attended classes taught in English and passed examinations in English. Although an interpreter was present during the April 22, 2016 hearing, defendant answered all questions in English and demonstrated that he clearly understood all but one of the questions put to him in English.[3]

- Defendant testified that growing up in Vietnam, he knew friends and relatives who were punished for disobeying law enforcement officials. Specifically, defendant testified that he witnessed government officials harassing friends and relatives who had disobeyed law enforcement officials. He stated that these persons were sent to jail, physically harmed, and sometimes sent to reeducation. Defendant also testified that it is the custom and belief in Vietnam to obey and not to resist any law enforcement request. He further testified that in sharp contrast to Vietnam, defendant perceives the United States to be a fair country.

- On April 29, 2015, a search warrant issued for defendant's business for evidence of trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320(a), and smuggling, in violation of 18 U.S.C. § 545.

---

[3] Specifically, it appeared that defendant did not immediately understand a question regarding whether Agent Abruzzese told him during the April 30, 2015 search of defendant's business premises that defendant was a target of an ongoing investigation.

- On April 30, 2015, during the daytime, nine Homeland Security Investigation ("HSI") agents, including Agent Abruzzese, executed a warrant for the search of the Falls Church business premises of IFAIFO. Although the agents were armed, they did not brandish or display their weapons, which remained in their holsters throughout the six-hour search.

- When the agents first arrived at defendant's business, which is located in a commercial business corridor in Falls Church, Virginia, they encountered defendant, defendant's father, and an employee of defendant's business. The agents informed these three individuals that the agents had a warrant to search the business premises. The agents also asked these three individuals to remain in the front part of the store for a few minutes while the agents conducted a brief protective sweep of the interior of the business as a safety precaution.

- After the agents confirmed that there were no threats present on the business premises, Agent Abruzzese returned to the front part of the store and told the three individuals that they were not under arrest, that they were free to go, and that the agents would continue to search the premises.

- Although defendant's father and the employee left the premises, defendant stayed for the entirety of the search. During the search, defendant remained in a chair near the front of the store, even though he was not required to remain there. Defendant was allowed to use his cell phone during the search.

- At some point during the search, defendant consented to being interviewed by Agent Abruzzese. Prior to obtaining defendant's consent, Agent Abruzzese explained that defendant was not under arrest, that defendant was able to leave at any time, that the search related to an ongoing investigation, that defendant was a target of that investigation,[4] and that defendant was not required to consent to an interview. Defendant indicated that he understood this information and consented to an interview. Agent Abruzzese then conducted the interview.

- Also present was a Vietnamese-speaking HSI agent who remained throughout the interview in the event his services were needed. In the end, this agent's services were not required during the interview of defendant.[5]

---

[4] Defendant testified that he does not recall being told at this time that he was a target of the investigation.

[5] Earlier during the search, the agent assisted in communications to defendant's father.

- Also during the search of defendant's business on April 30, 2015, Agent Abruzzese presented defendant with four consent-to-search forms. Prior to obtaining defendant's consent, Agent Abruzzese explained that defendant was not required to sign these forms, cautioned defendant that anything found as a result of the consent searches could be used against defendant, and read each form to defendant. Defendant made no indication that he did not understand the content of the forms or Agent Abruzzese's statements. Defendant then signed the four consent-to-search forms, thereby giving the government his consent to search two vehicles, a storage unit, and certain electronic devices. Gov. Exs. 1-4, Consent Search Forms. Defendant never sought to limit or withdraw his consent.

- Thereafter, on May 7, 2015, at a time mutually agreed upon by defendant and Agent Abruzzese, defendant voluntarily drove to the HSI office in Dulles, Virginia. There, agents returned various items that had been seized as a result of the April 30, 2015 searches, but were no longer considered evidence.

- At the HSI office, on May 7, 2015, agents again explained that defendant was neither under arrest nor in custody, that defendant could leave at any time, and that defendant was not required to participate in an interview. Defendant indicated that he understood and consented to an interview. Agent Abruzzese asked if defendant had any objection to recording the interview, and defendant did not object. Agent Abruzzese then conducted an interview, which lasted approximately 75 minutes. Gov. Ex. 5, Interview Audio Recording (May 7, 2015).

- Agent Abruzzese and one other agent conducted the interview in an interview room. Defendant sat in the chair closest to the door. The two agents were armed, but never brandished or displayed their firearms, which remained in their holsters at all times. On more than one occasion during the interview, Agent Abruzzese reiterated that defendant was free to go. Interview Audio Recording (May 7, 2015).

- Moreover, the audio recording of the interview reflects that Agent Abruzzese maintained a calm and professional demeanor, did not raise his voice, and did not in any way attempt to threaten or intimidate defendant. *Id.* The audio recording also reflects that defendant's responses did not indicate that he felt intimidated or threatened. *Id.* Although the interview was conducted behind closed doors, the audio recording reflects that when Agent Abruzzese closed the door, he clearly explained to defendant that he did so only to eliminate the noise from outside the room.

4

- At the end of the interview, Agent Abruzzese presented defendant with a consent-to-search form. Agent Abruzzese explained to defendant that he was not required to sign the form and that anything found as a result of the consent search could be used against defendant. Agent Abruzzese then read the form to defendant prior to obtaining defendant's signature. Defendant made no indication that he did not understand the content of the forms or Agent Abruzzese's instructions. Defendant then signed the consent form, thereby giving the government his consent to search certain electronic devices, including defendant's computer. Gov. Ex. 6, Consent Search Form. Defendant never sought to limit or withdraw his consent.

- Thereafter, on May 15, 2015, defendant again voluntarily drove to the HSI office in Dulles, Virginia, where agents again returned various items. Agent Abruzzese explained that defendant was neither under arrest nor in custody, that defendant could leave at any time, and that defendant was not required to participate in another interview. Defendant indicated that he understood and at Agent Abruzzese's request, defendant consented to an interview. Agent Abruzzese asked if defendant had any objection to recording the interview, and defendant did not object. Agent Abruzzese then conducted the interview, which lasted approximately 50 minutes.

- During the interview on May 15, 2015, defendant stated, among other things, that he was bilingual in Vietnamese and English. Gov. Ex. 7, Interview Audio Recording (May 15, 2015). Moreover, the audio recording of the interview reflects that Agent Abruzzese maintained a calm and professional demeanor, did not raise his voice, and did not in any way attempt to threaten or intimidate defendant. *Id.* The audio recording also reflects that defendant's responses did not indicate that he felt intimidated or threatened. *Id.*

- On December 9, 2015, a one-count criminal complaint issued, charging defendant with trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320. The following day, December 10, 2015, several agents, including Agent Abruzzese, went to defendant's business to arrest defendant.

- On December 10, 2015, prior to defendant's arrest, one of the agents presented defendant with five consent-to-search forms. The agent explained to defendant that defendant was not required to sign these forms and that anything found as a result of the consent searches could be used against defendant. The agent then read each form to defendant prior to obtaining defendant's signature on each form. Defendant made no indication that he did not understand the content of the forms or the agent's instructions. Defendant then signed the five consent-to-search forms, thereby giving the government his consent to search defendant's business location, defendant's vehicles, and defendant's two iPhones. Gov. Exs. 9-13, Consent Search Forms. Defendant never sought to limit or withdraw his consent. Defendant was neither handcuffed nor otherwise detained at this time.

- After defendant signed the consent-to-search forms, the agents read defendant his *Miranda* rights. Defendant then asked for an attorney, and no interview was conducted. Shortly thereafter, defendant was handcuffed and placed under arrest.
  On March 3, 2016, a grand jury returned a three-count indictment charging defendant

with one count of conspiring to traffic in counterfeit goods, in violation of 18 U.S.C. § 2320(a)(1), and two counts of smuggling, in violation of 18 U.S.C. § 545. Specifically, the indictment alleges that "between in and about 2013 and continuing through in or about April 2015," defendant conspired with others to traffic counterfeit goods—namely, cell phone parts and accessories with Apple and Samsung marks on them—from China and Hong Kong. Indictment.

## II.

Defendant has moved to suppress all of defendant's statements to law enforcement, as well as the fruits of defendant's interviews with law enforcement and the fruits of various searches conducted pursuant to defendant's consent. Specifically, defendant contends (i) that law enforcement violated defendant's Fifth Amendment right against self-incrimination, and (ii) that defendant's waiver of his Fourth Amendment rights was neither knowing nor voluntary. Yet, as the government correctly contends, these arguments must be rejected.

## A.

With respect to defendant's first argument—that the government violated defendant's Fifth Amendment right against self-incrimination—defendant challenges the three separate interviews that occurred on April 30, 2015, May 7, 2015, and May 15, 2015.

The Supreme Court has explained that in order to protect a defendant's constitutional right against self-incrimination, law enforcement must inform individuals who are in custody of their Fifth Amendment rights prior to conducting an interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Without a *Miranda* warning, evidence obtained from a custodial interrogation is

6

generally inadmissible. *United States v. Hargrove*, 625 F.3d 170, 177 (4th Cir. 2010). Importantly, when a defendant is not under arrest, *Miranda* applies only "where there has been such a restriction to a person's freedom as to render him 'in custody.' " *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001). In this regard, the Fourth Circuit has explained that a person is deemed to be "in custody" if under the totality of the circumstances, "a reasonable person would [not] feel free to decline the officers' requests or otherwise terminate the encounter." *United States v. Johnson*, 509 F.3d 623, 628 (4th Cir. 2007) (internal quotation marks and citation omitted). Although a government agent's clear pre-interview statement that an individual is not in custody and is free to leave is not "sufficient in and of itself to show a lack of custody," such a statement is "highly probative of whether, in the totality of the circumstances, a reasonable person would have reason to believe he was in custody." *Hargrove*, 625 F.3d at 180.

Here, the facts do not support a conclusion that defendant was in custody during any of the three interviews in issue. Indeed, prior to conducting each interview, government agents informed defendant that he was free to leave because defendant was neither under arrest nor under any obligation to speak with law enforcement. Moreover, it is clear from Agent Abruzzese's testimony and the recordings of the May 2015 interviews that defendant understood that he was not under arrest, that he was free to leave, and that he voluntarily consented to answering questions. Interview Audio Recording (May 7, 2015); Interview Audio Recording (May 15, 2015).

Defendant was first questioned during the April 30, 2015 execution of the warrant to search defendant's business premises. The circumstances of this event in no way suggest that the environment was unduly restrictive or intimidating. At no point, for example, was defendant forcefully separated from his coworkers or family members under the threat of force or

7

intimidation. Although multiple agents were on the scene, none brandished or displayed a weapon and no one was arrested. *See United States v. Jamison*, 509 F.3d 623, 633 (4th Cir. 2007) (noting that "[a]bsent police-imposed restraint, there is no custody"). Moreover, prior to conducting the interview, Agent Abruzzese clearly explained to defendant that defendant was not under arrest, that defendant could leave at any time, that the search related to an ongoing investigation, that defendant was a target of that investigation,[6] and that defendant was not required to consent to an interview. It was only after defendant demonstrated that he understood these statements that Agent Abruzzese interviewed defendant. These circumstances distinguish the April 30, 2015 interview from cases in which the circumstances were such that a reasonable person would believe he was in custody.[7] Thus, there is no sound basis for concluding that defendant was in custody on April 30, 2015. *Johnson*, 509 F.3d at 628.

Similar reasoning applies to the two interviews conducted in May 2015. With respect to the May 7, 2015 interview, defendant voluntarily drove to the HSI Dulles office at a time mutually agreed upon by defendant and Agent Abruzzese. Thus, in this regard, defendant could not reasonably have had the impression that he "ha[d] no choice but to submit to the officers' will and to confess." *Minnesota v. Murphy*, 465 U.S. 420, 433 (1984).[8] And with respect to both

---

[6] As noted supra n.3, during the April 22, 2016 hearing, defendant testified that he does not recall being told that he was a target of the investigation at this time. Importantly, whether defendant was told he was a target is immaterial, as it has no bearing on the issue of custody.

[7] *See, e.g.*, *United States v. Hashime*, 734 F.3d 278, 285 (4th Cir. 2013) (finding a defendant who had not been arrested was in custody because his "house was swarming with federal and state agents, he was rousted from bed at gunpoint, held with family members and not allowed to move unless guarded, and ultimately separated from his family and placed in a small storage room with two agents where he was questioned" by investigators for hours at a time).

[8] *See also Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (concluding that a defendant was not in custody because "[h]e came voluntarily to the police station, where he was immediately informed that he was not under arrest"); *United States v. Jones*, 818 F.2d 1119, 1125 (4th Cir.

May interviews, Agent Abruzzese again notified defendant that he was not under arrest, that he could leave at any time, and that he was not required to consent to the interviews. On the basis of Agent Abruzzese's testimony and the audio recordings, it is clear that defendant understood Agent Abruzzese's statements and freely consented to an interview on each occasion. Interview Audio Recording (May 7, 2015); Interview Audio Recording (May 15, 2015). After each interview was completed, defendant freely left. Moreover, the audio recordings of these interviews reflect that Agent Abruzzese's questions were professional and that defendant never displayed signs that he was on guard or intimidated. Interview Audio Recording (May 7, 2015); Interview Audio Recording (May 15, 2015). And although the May 7, 2015 interview was conducted behind closed doors, the audio recording of that interview reflects that Agent Abruzzese clearly explained to defendant that Agent Abruzzese closed the door only to eliminate outside noise. Interview Audio Recording (May 7, 2015). Thus, there is no basis for concluding that a reasonable person would have believed he was in custody during either of the May interviews. *Johnson*, 509 F.3d at 628.[9]

In opposition to the result reached here, defendant's counsel argued during oral argument that defendant's acculturation to Vietnam, an authoritarian society, precluded defendant from giving knowing and voluntary consent to participate in any interview. Specifically, defendant's counsel argued that because of defendant's experiences in Vietnam, defendant felt a psychological pressure to cooperate fully with law enforcement. This argument fails. Although

---

1987) (concluding that defendants were not in custody because "[t]hey came to the police station as a result of their voluntary responses to the agents' requests to speak with them … [and] were allowed to leave unhindered after a [forty-five minute] interview").

[9] *See also Murphy*, 465 U.S. at 433 (noting that interrogations derive their coerciveness "in large measure from an interrogator's insinuations that the interrogation will continue until a confession is obtained").

defendant grew up in an authoritarian culture, he has lived in the United States since 2002 and has spent most of his adult life in this country. Moreover, defendant became a naturalized American citizen, which required him to pass a citizenship test and to learn about the form and genius of the United States government. In this regard, during the April 22, 2016 hearing, defendant clearly stated that he perceives the United States government to be fair. These circumstances make it impossible to accept defendant's counsel's assertion that defendant believes—after approximately 13 years in the United States—that he lives in an authoritarian society in which he must always consent to law enforcement officials. Moreover, there is no sound legal basis for the argument that a psychological pressure rooted in an individual's past experience in another country—rather than the government's conduct—implicates the Fifth Amendment. Indeed, contrary to defendant's contention, the Supreme Court has made clear that "the Fifth Amendment privilege is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.' " *Colorado v. Connelly*, 479 U.S. 157, 170 (1986) (quoting *Oregon v. Elstad*, 470 U.S. 298, 305 (1985)). The Supreme Court has further explained that "[t]he voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." *Id.* (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).[10] Defendant's argument to the contrary must be rejected.

---

[10] In the course of oral argument, defendant's counsel reviewed a large number of post-*Miranda* Supreme Court decisions, all of which are contrary to defendant's position. For example, defendant relied on the Supreme Court's decision in *Connolly* for the proposition that it is appropriate to consider psychological causes beyond the government's control when considering whether an individual is in custody, even though the Supreme Court in *Connolly* flatly rejected that proposition. *Id.*

In sum, considering the totality of the circumstances, defendant was not in custody during each of the three interviews in issue, and therefore defendant's motion to suppress the fruits of these interviews must be denied.

**B.**

Defendant next argues that although defendant signed consent forms for various searches, his consent to each of these searches was not knowing and voluntary, and therefore the fruits of these searches must be suppressed. This argument fails because during the hearing on April 22, 2016, the government presented exhibits and testimony that point persuasively to the conclusion that all of defendant's consents to search were knowing and voluntary.

The Fourth Circuit has explained that "valid consent to seize and search items provides an exception to the usual warrant requirement," and that on a motion to suppress, the government must establish by a preponderance of the evidence that law enforcement obtained from the defendant consent that was knowing and voluntary. *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007). Whether consent is knowing and voluntary is determined by the totality of the circumstances, such as "the characteristics of the accused ... as well as the conditions under which the consent to search was given." *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996) (en banc). Also relevant is whether the accused knew that he had the right to refuse consent, although the government "need not demonstrate that the defendant knew of his right to refuse consent to prove that the consent was voluntary." *Id.*

Here, each time defendant consented to a search, defendant had the requisite knowledge and experience to exercise a valid written consent. *See Lattimore*, 87 F.3d at 650 (reasoning that a defendant knowingly and voluntarily consented in part because on "the date of the search, [he] was 29 years old, had a high school education, and held employment with the United States

11

Postal Service"). Defendant is a 32-year old college graduate and small-business owner who speaks, reads, and writes English. Defendant has lived in the United States since 2002, and is a United States citizen. Defendant has earned a Bachelor of Science degree in Finance from George Mason University, where he attended classes taught in English and passed examinations presented in English. Moreover, although an interpreter accompanied defendant during the April 22, 2016 hearing, defendant answered all questions in English and clearly understood all but one question that was put to him in English. In addition, the audio recordings of the May interviews reflect that although defendant speaks with an accent, he communicates in English with ease. Interview Audio Recording (May 7, 2015); Interview Audio Recording (May 15, 2015). And in this regard, during the May 15, 2015 interview, defendant stated that he was bilingual in Vietnamese and English. Interview Audio Recording (May 15, 2015).

HSI agents clearly informed defendant of his right to refuse consent on at least three separate occasions: (i) on April 30, 2015, before defendant signed four consent-to-search forms; (ii) on May 7, 2015, before defendant signed a consent-to-search form authorizing a search of his electronic devices; and (iii) on December 10, 2015, before defendant signed five consent-to-search forms prior to his arrest. Specifically, before obtaining defendant's consent in each instance, government agents (i) explained that defendant was not required to sign the forms, (ii) cautioned defendant that anything found as a result of the consent searches could be used against defendant, and (iii) read each form to defendant. Defendant never made any indication that he did not understand the content of the forms or what the agents told him. These repeated statements—along with defendant's personal characteristics—clearly support an inference that defendant knew of his right to refuse consent.

Furthermore, the circumstances in which defendant consented to searches were neither coercive nor intimidating. With respect to defendant's April 30, 2015 written consents to various searches, nothing in the record suggests that defendant signed the consent-to-search forms under threatening circumstances. The April 30, 2015 search occurred during the daytime in a commercial business corridor. *See Lattimore*, 87 F.3d at 650 (noting that "[t]he incident occurred on a well-travelled highway, during the middle of the afternoon" in support of the conclusion that the defendant was not in custody). And there is no evidence that agents made any threats or coercive statements to defendant. Thus, considering the totality of the circumstances, the government has established by a preponderance of the evidence that defendant's April 30, 2015 consent was given knowingly and voluntarily.

With respect to the May 7, 2015 written consent to search defendant's electronic devices, it is clear that defendant voluntarily drove to the HSI office, that defendant understood that he was neither under arrest nor in custody, and that he could leave at any time. Moreover, the audio recording of the interview reflects that the interview was generally professional, collegial, and lasted a little more than an hour. Interview Audio Recording (May 7, 2015). The agents allowed defendant to ask questions, and near the end of the interview, Agent Abruzzese read the consent form to defendant and asked if he understood his rights. *Id.* Agent Abruzzese also asked defendant if Agent Abruzzese needed to speak more slowly; in response, defendant indicated that he understood everything Agent Abruzzese had said. *Id.* Defendant gave his oral consent to a search, and then executed a written consent statement. Thus, considering the totality of the circumstances, the government has established by a preponderance of the evidence that defendant's May 7, 2015 consent was given knowingly and voluntarily.

Defendant's December 10, 2015 written consents to search his two vehicles, his two iPhones, and his business location were also knowing and voluntary. Thus, there is no basis to suppress the evidence discovered as a result of these searches. By this date, almost eight months had passed since defendant's initial consent to a search. Over that time period, defendant interacted with HSI on at least three occasions, executed other consent-to-search forms, and never withdrew or attempted to withdraw consent. On this occasion, prior to obtaining defendant's consent, an agent again (i) explained that defendant was not required to sign the forms, (ii) cautioned defendant that anything found as a result of the consent searches could be used against defendant, and (iii) read each form to defendant. Defendant never made any indication that he did not understand the content of the forms or what the agents told him. These circumstances, along with defendant's background, age, education, and other factors point persuasively to the conclusion that on December 10, 2015, defendant knowingly and voluntarily signed five consent-to-search forms.

Moreover, with respect to defendant's argument that defendant's prior experiences in Vietnam precluded defendant from knowingly and voluntarily consenting to any search, this argument fails because as already noted, defendant (i) has lived in the United States since 2002, (ii) has spent most of his entire adult life in this country, (iii) became a naturalized American citizen, which required him to pass a citizenship test, and (iv) clearly stated during the April 22, 2016 hearing that in sharp contrast to his experience in Vietnam, defendant perceives the United States government to be fair. Moreover, defendant has cited no case—nor has any been found— that supports the proposition that a defendant's experience in another country precludes him from knowingly and voluntarily consenting to a search after the government has made clear that consent is not required. Thus, defendant's argument that his experiences in Vietnam created a

psychological pressure to obey law enforcement, and therefore precluded him from knowingly and voluntarily consenting to any search, must be rejected. A contrary conclusion would lead to the anomalous result that prior to obtaining an individual's consent to search, a government agent must plumb the depths of that individual's psyche to determine whether he may have *any* past experience that results in some psychological pressure to consent to a search. The Fourth Amendment requires government agents to obtain knowing and voluntary consent from an individual before conducting a consent search; it does not require Jungian psychoanalysis of the individual.

### III.

Defendant also filed a motion for a bill of particulars on the ground that the indictment is not sufficiently particularized. Specifically, defendant seeks to require the government (i) to identify the members of the alleged conspiracy, (ii) to identify the conspiracy's scope, (iii) to provide all statements, written or oral, made by the alleged co-conspirators or others which the government intends to use in its prosecution, (iv) to identify the beginning and end of the conspiracy, and (v) to identify with specificity defendant's actions that related to the smuggling counts. As the government correctly contends, however, this motion must be denied because the indictment is sufficiently particular and because defendant has received—and will continue to receive—discovery.

Pursuant to Rule 7(f), Fed. R. Crim. P., "[t]he court may direct the government to file a bill of particulars," which as one court has noted, is intended "to enable a defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense." *United States v. Macauley*, No. 1:11cr199, 2011

WL 4853366, at *3 (E.D. Va. Oct. 13, 2011) (internal quotation marks omitted). In this regard, a bill of particulars is a tool of augmentation meant to provide "missing or additional information so that the defendant can effectively prepare for trial." *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996). Importantly, however, as the Fourth Circuit has made clear, a bill of particulars should "not be used to provide detailed disclosure of the government's evidence in advance of trial." *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985). Rather, a bill of particulars should be used only to remedy factually deficient indictments that "are so general they do not advise the defendant of the specific acts of which he is accused." *United States v. Ziccardi*, No. 14cr107, 2014 WL 5459939, at *1 (E.D. Va. Oct. 27, 2014) (internal quotation marks omitted). If the indictment "adequately details the charges, or the information requested is otherwise available, then no bill of particulars is required." *United States v. Guild*, No. 1:07cr404, 2008 WL 110455, at *2 (E.D. Va. Jan 8, 2008).

With respect to defendant's request for disclosure of his coconspirators, the Fourth Circuit and district courts in this circuit have routinely denied similar requests on a motion for a bill of particulars. *United States v. Jackson*, 757 F.2d 1486, 1419 (4th Cir. 1985).[11] In this regard, one court has noted that where, as here, an indictment "sets forth the discrete acts evidencing a defendant's involvement in a conspiracy, courts have held that the identities of co-conspirators need not be revealed." *See Macauley*, 2011 WL 4853366, at *4. Here, the indictment describes discrete acts demonstrating defendant's involvement in the alleged conspiracy, including the importation

---

[11] *See also United States v. Ahmad*, No. 1:14cr164, 2014 WL 2766121, at *8 (E.D. Va. June 18, 2014) (denying the "defendant's request for the [g]overnment to identify all persons alleged to have participated in the conspiracy" because such a request "goes beyond the limited, enumerated purposes for which it is proper to require particularization"); *Macauley*, 2011 WL 4853366, at *4 (denying a request to particularize the indictment where the defendant "fail[ed] to explain how the disclosure of 'any and all' unnamed co-conspirators is essential to an effective defense or necessary to avoid unnecessary surprise").

of several packages containing counterfeit goods from Hong Kong and China, and allegations that defendant used and distributed these goods as part of defendant's business. Thus, defendant's request for disclosure of his coconspirators must be denied.

Defendant's request that the government be required to particularize the scope of the conspiracy must also be denied because the indictment already contains more than adequate information in this regard such that "defendant can effectively prepare for trial." *Fletcher*, 74 F.3d at 53. Specifically, the indictment alleges the charges against defendant, the object of the conspiracy, the manner and means by which the conspiracy was executed, and a non-exhaustive list of overt acts. Moreover, defendant has received discovery to this effect and will continue to do so. Thus, in light of the detail provided in the indictment and the discovery available to defendant, defendant's request for the government to particularize the scope of the conspiracy must be denied. *See United States v. Adams*, 770 F.2d 399, 405 (4th Cir. 1985) (unpublished) (explaining that the information necessary to prepare a defense can be supplied "through the use of a bill of particulars or discovery").

Defendant next requests a particularized statement regarding any and all coconspirator statements that the government intends to use at trial. This request must also be denied because as the government correctly contends, it amounts to an attempt to use a bill of particulars as a vehicle for "detail[ing] disclosure of the government's evidence in advance of trial." *Automated Med. Labs., Inc.*, 770 F.2d at 405. The Fourth Circuit has rejected a similarly broad theory of particularity. *See United States v. Anderson*, 481 F.2d 685, 691 (4th Cir. 1973) (affirming a district court's decision not to order particularity of "the entire range of evidence on which the [g]overnment relied, including the names of all witnesses"). Thus, defendant's request for

17

particularized coconspirator statements must be denied because this request exceeds the purpose and boundaries of a bill of particulars.

Next, defendant requests particularized facts regarding the beginning and end of the conspiracy. This request must also be denied because the indictment already alleges with particularity that the conspiracy operated from "in or about 2013" through "in or about April 2015." Indictment. Moreover, "[c]ourts have held that information concerning the time period during which a defendant is alleged to have been knowingly involved in a conspiracy is not essential to effective preparation for trial." *United States v. Kwang Hee Kim*, No. 1:12cr280, 2012 WL 5879830, at *3 (E.D. Va. Nov. 20, 2012) (collecting cases). Accordingly, defendant's request for particularity as to the date range of the conspiracy must be denied.

Finally, defendant seeks a particularized statement of defendant's exact actions as they relate to each smuggling count. Again, this request must be denied as a request for detail beyond what is necessary. *See Guild*, 2008 WL 110455, at *2 (rejecting a request to particularize an indictment that was allegedly "not specific enough and merely restate[d] the particular statute the [d]efendent [was] charged with violating"). The indictment here recites not only the elements of the alleged smuggling offenses, but also incorporates specific facts, such as relevant dates and the shipment numbers. These allegations, along with the government's continuing discovery disclosures, defeats defendant's request for particularity, as "[a] defendant is not entitled to an unnecessary bill of particulars, where the underlying objectives of a [Rule 7] motion are fully satisfied by informal and formal discovery." *United States v. Taylor*, No. 3:04cr227, 2005 WL 2298170, at *4 (E. D. Va. Sept. 21, 2015) (internal quotation marks omitted).

In sum, defendant's motion for a bill of particulars must be denied in all respects.

18

## IV.

Accordingly, for these reasons, defendant's motion to suppress and defendant's motion for a bill of particulars must be denied.

An appropriate Order has already issued.

Alexandria, Virginia
April 27, 2016

/s/

T. S. Ellis, III
United States District Judge